Gina Ricarda MIRANDA, also known as Ricardo Pabel Miranda, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE; United States of America, Respondent.

No. 94–2854.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1995.

Decided April 4, 1995.

George W. Perez, St. Paul, MN, argued, for appellant.

James A. Hunolt, Dept. of Justice, Washington, DC, argued (Allison R. Drucker and Robert L. Bombaugh on the brief), for appellee.

Before FAGG, MAGILL, and LOKEN, Circuit Judges.

PER CURIAM.

Gina Ricarda Miranda, a Honduran citizen, entered the United States illegally and has resided in this country for the past eleven years. Miranda is a transsexual who was born male, but has always believed she is female. The Immigration and Naturalization Service (INS) found Miranda to be deportable, denied her request for asylum, and granted her voluntary departure. Miranda appealed the INS decision to the Board of Immigration Appeals (BIA). While her BIA appeal was pending, Miranda had sexual reassignment surgery to become a woman. The BIA dismissed Miranda's appeal and ordered her to depart the country. Arguing her sexual reassignment surgery would cause her to face medical and social hardship if she returned to Honduras, Miranda moved to reopen the deportation proceedings to allow her to apply for a suspension of deportation under 8 U.S.C. § 1254(a)(1) (1988 & Supp. V 1993). The BIA denied the motion because Miranda failed to make a prima facie showing of extreme hardship, which is necessary for reopening. *INS v. Jong Ha Wang*, 450 U.S. 139, 141, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981) (per curiam). Miranda appeals, and we affirm.

Miranda first contends the BIA abused its discretion in denying her motion to reopen, because the BIA distorted or failed to consider Miranda's evidence about the medical hardship Miranda would face in Honduras as a result of her sexual reassignment surgery. Specifically, Miranda argues the BIA mischaracterized the evidence by stating, "[T]here is no clear medical evidence, only [Miranda's] own unsupported assertions, that she could not obtain any needed follow-up medical care in Honduras." It is an abuse of discretion for the BIA to fail to consider all the relevant factors raised in support of a hardship claim, or to distort or

disregard important aspects of the claim. *Barragan–Verduzco v. INS,* 777 F.2d 424, 425 (8th Cir.1985). The BIA's statement about Miranda's medical evidence, however, is a fair reading of the record rather than a distortion. Miranda submitted letters from two American and two Honduran doctors in addition to her affidavit, but these letters do not show Miranda would face medical hardship in Honduras. According to the American doctors, Miranda is a transsexual requiring treatment, but now that she has had surgery, the only medical care Miranda needs is hormone treatments and biannual checkups. The American doctors do not indicate appropriate checkups and hormone treatments are unavailable in Honduras. The letters from the Honduran doctors state, without explanation, that an "integral" or "integrated" treatment for transsexualism is not available in Honduras. The Honduran doctors wrote these letters before Miranda had her sexual reassignment surgery, and it is reasonable to assume surgery is a major part of an "integrated" treatment. Miranda no longer needs surgery, and the Honduran doctors do not state Miranda could not receive hormone treatments or checkups in Honduras. In fact, the Honduran doctors indicate Miranda was at least receiving psychiatric counseling for transsexualism before Miranda left Honduras. Thus, the BIA's statement about the lack of clear medical hardship evidence is not a distortion of the record.

■ Miranda also contends the BIA distorted and failed to consider fully her evidence about the social hardship she would experience if deported. According to Miranda, the BIA did not consider evidence that Miranda will face discrimination and governmental persecution in Honduras and cannot legally change her name and gender in Honduras. The BIA decision, however, specifically notes Miranda presented evidence about all these concerns, and the BIA acknowledged Miranda will face some social difficulties in Honduras as a result of her sexual reassignment surgery. The BIA did not consider the potential social hardship to be extreme because Miranda "lived as a woman in Honduras before she left ... and was able to be employed there [as a wom-

an]." Miranda contends this statement is a distortion of the evidence, because she lived as a man most of the time she was in Honduras and was never employed there as a woman. Contrary to Miranda's contention, the BIA's statement is a reasonable interpretation of the record. Miranda's own affidavit states that while she still resided in Honduras, Miranda "decided not to hide [her transsexualism] any longer" and began dressing as a woman. Although a supervisor at work threatened to fire her, another supervisor defended her and Miranda did not lose her job. Based on the record and the BIA's decision, we conclude the BIA did not ignore or distort Miranda's evidence about social hardship.

■ Miranda next contends the BIA abused its discretion by not adequately explaining the BIA's reasons for denying Miranda's motion to reopen. *See Carrete–Michel v. INS,* 749 F.2d 490, 494 (8th Cir.1984). We disagree. The BIA does not need to discuss each of Miranda's contentions at length. *El–Gharabli v. INS,* 796 F.2d 935, 938 (7th Cir.1986). Instead, the BIA is only required to " 'announce its decision in terms sufficient to enable a reviewing court to perceive that [the BIA] has heard and thought and not merely reacted.' " *Hsi Sheng Liu v. United States Dep't of Justice,* 13 F.3d 1175, 1178 (8th Cir.1994) (quoting *Barragan–Verduzco,* 777 F.2d at 426). In explaining its decision not to reopen, the BIA rejected Miranda's assertions about medical hardship because they were not supported by clear medical evidence. The BIA also stated that although Miranda would face some social difficulties in Honduras, she had lived and worked in Honduras as a woman. Having carefully reviewed the BIA's decision, we are satisfied the BIA thoughtfully considered the facts and arguments Miranda presented.

■ Finally, Miranda contends the BIA abused its discretion in concluding Miranda failed to present a prima facie case of extreme hardship. She argues the BIA interpreted the phrase "extreme hardship" more narrowly than Congress intended. Again, we disagree. The BIA has authority to interpret "extreme hardship" narrowly and to

be restrictive in deciding when to reopen cases. *Jong Ha Wang,* 450 U.S. at 144 n. 5, 145, 101 S.Ct. at 1031 n. 5. The BIA's denial of Miranda's motion, on the grounds that Miranda's potential difficulty in readjusting to life in Honduras was insufficient to establish extreme hardship, was not an abuse of discretion. *See Sullivan v. INS,* 772 F.2d 609, 610–11 (9th Cir.1985) (no abuse of discretion in finding no extreme hardship to homosexual alien who claimed his friends and family at home had disowned him and he would not be able to find work there because of discrimination and poor economy).

We affirm the BIA's denial of Miranda's motion to reopen her deportation proceedings.